UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

In re:                                                                  Chapter 7

SHARON THOMPSON,                                                        Case No. 23-42399-ess

                       Debtor.
-------------------------------------------------------------------------x

SHARON THOMPSON,                                                        Adv. Pro. No. 23-01069-ess

                       Plaintiff,

v.

UNITED STATES OF AMERICA
INTERNAL REVENUE SERVICE,

                       Defendant.
-------------------------------------------------------------------------x

## **MEMORANDUM DECISION GRANTING MOTION TO DISMISS**

Appearances:

| | |
|---|---|
| Sheldon Barasch, Esq. | Daniel M. Caves, Esq. |
| DC37 Municipal Employees Legal Services | United States Department of Justice |
| 125 Barclay Street | Tax Division |
| New York, NY 10007 | P.O. Box 55 |
| | Washington, DC 20044 |
| *Attorneys for Plaintiff Sharon Thompson* | |
| | Breon S. Peace, Esq. |
| | United States Attorney |
| | Eastern District of New York |
| | 271-A Cadman Plaza East |
| | Brooklyn, NY 11201 |
| | |
| | Kevin Yim, Esq. |
| | Assistant United States Attorney |
| | Eastern District of New York |
| | 271-A Cadman Plaza East |
| | Brooklyn, NY 11201 |
| | |
| | *Attorneys for Defendant United States Internal Revenue Service* |

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

More than ninety years ago, the Supreme Court observed that "[o]ne of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' This purpose . . . [is] of public as well as private interest, in that it gives to the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) (citations omitted).

These precepts are lofty, and they are also practical. When a debtor files for bankruptcy relief, they seek a discharge of their debt, to the extent permitted by law. Some categories of debt are excluded from discharge by the Bankruptcy Code, and some debts within those categories may be outside the scope of those exclusions. Debtors and creditors do not need to speculate as to whether a debt is within or outside the scope of a discharge. Instead, Bankruptcy Rule 7001 provides that a party may bring "[an adversary] proceeding to determine the dischargeability of a debt." And this is one such action.

In this adversary proceeding, the debtor Sharon Thompson seeks a determination that her unpaid federal income taxes from several years ago are not excluded from her Chapter 7 bankruptcy discharge by Bankruptcy Code Section 523(a)(1)(A). That is, she seeks clarity on the scope of her bankruptcy discharge. As it turns out, the defendant Internal Revenue Service does not disagree, as to this limited basis for relief. On this motion to dismiss, it asserts both that Ms. Thompson's aged federal income tax debt is not excluded from discharge by Section 523(a)(1)(A), and that the parties' accord on this point divests this Court of subject matter

1

jurisdiction to enter a decision.

As explained below, the Court is persuaded that Ms. Thompson is entitled to an order that her federal income tax debt for the years 2012 to 2016 does not come within Bankruptcy Code Section 523(a)(1)(A)'s exception to discharge. The Court is also persuaded that, as the IRS asserts, this case can be dismissed. But the Court is not persuaded that it lacks the subject matter jurisdiction to reach these conclusions.

## Background and Procedural History

### *Ms. Thompson's Chapter 7 Bankruptcy Case*

On July 7, 2023, this bankruptcy case began when Sharon Thompson filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In her bankruptcy petition, she lists several debts arising from unpaid federal income taxes for the years 2012 to 2016. *In re Sharon Thompson*, Case No. 23-42399 ECF No. 1, Schedule E/F Creditors Who Have Unsecured Claims.

### *This Adversary Proceeding*

On August 17, 2023, several weeks after she began her bankruptcy case, Ms. Thompson commenced this adversary proceeding by filing a Complaint against the United States of America Internal Revenue Service (the "IRS") seeking, among other relief, a determination that certain of her pre-petition federal income tax debts are dischargeable under Bankruptcy Code Section 523 and Bankruptcy Code Section 507(a)(8)(A).

Specifically, Ms. Thompson seeks a determination that her federal income tax debt for the tax years 2012 through 2016 may be discharged in her Chapter 7 bankruptcy case. Ms. Thompson's federal income tax debts for these years are $3,748 for 2012; $5,455 for 2013; $8,066 for 2014; $7,258 for 2015; and $957 for 2016, totaling $25,484. This may not seem to be

a large sum to the IRS, but it is plain from the record of Ms. Thompson's bankruptcy case that achieving the discharge of these aged and unpaid taxes, which amount to more than one-quarter of her scheduled unsecured debt, is among the principal reasons that she sought bankruptcy relief.

Ms. Thompson seeks this relief on grounds, in substance, that these tax debts are more than three years old – or more precisely, that the federal income taxes that she owes for these years are *not* claims "for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(A)(i).

On October 31, 2023, the IRS filed a Motion to Dismiss this Adversary Proceeding on grounds, in substance, that it does not dispute Ms. Thompson's assertions with respect to the dischargeability of her federal income tax debt. The IRS states that it "cannot dispute that the exceptions to discharge in § 523(a)(1)(A) and (B) are inapplicable" to these amounts. Motion to Dismiss, ECF No. 6 ("Mot."), at 1. It argues that because it does not dispute the dischargeability of these debts, this action should be dismissed because this Court lacks jurisdiction over these undisputed claims, or alternatively, that Ms. Thompson's claims are not ripe, or alternatively, because the tax exclusion clause of the Declaratory Judgment Act "bars what is a purely declaratory action." Mot. at 24

On November 27, 2023, Ms. Thompson filed an Amended Complaint. ECF No. 10. In the Amended Complaint, she adds the allegation that the "IRS has filed a Notice of Federal Tax Lien in Kings County with regard to [Ms. Thompson's] alleged tax liability" and a request that this Court vacate that tax lien. And on December 9, 2023, the IRS filed a Reply Memorandum of Law in further support of its Motion to Dismiss. ECF No. 13.

On December 14, 2023, Ms. Thompson filed an Affirmation in Opposition to the Motion

to Dismiss. ECF No. 14. On January 4, 2024, the IRS filed a Reply to her Affirmation, and on February 22, 2024, Ms. Thompson filed a second Amended Complaint that seeks narrower and more tailored relief, in the form of a judgment that her federal income tax debt for these years is not excluded from her bankruptcy discharge under Bankruptcy Code Section 523(a)(1)(A). ECF No. 20. And on March 25, 2024, the IRS filed an Answer to the second Amended Complaint. ECF No. 24.

From time to time, and on February 21, 2024, the Court held a pre-trial conference and hearing on this Motion to Dismiss, at which Ms. Thompson and the IRS appeared and were heard. At that conference, the IRS expressed concern that, to the extent that Ms. Thompson sought "an affirmative declaration that [her tax debt] is discharged no matter what," the IRS would be required not just to address whether, "based on the age of the tax debt that [Bankruptcy Code Section] 523(a)(1)(A) applies," but also to consider whether any other grounds for nondischargeability, including fraud or a willful attempt to defeat the taxes within Bankruptcy Code Section 523(a)(1)(C) might apply. Transcript of February 21, 2024 hearing, ECF No. 22 ("Feb. 21 Hearing Tr."), at 20:4-8.

And the IRS stated that the potential breadth of that relief:

> goes to one of the issues that comes up in these sorts of cases which is that before the IRS has actually had a chance to really look at the facts of the case, . . . it would essentially find itself in a situation where it could be precluded by res judicata from ever raising that issue in the future of those facts.

Feb. 21 Hearing Tr. at 20:9-14.

During the same hearing, the Court and the parties addressed the prospect of a consensual resolution, in light of the apparent accord on the central issue of the dischargeability of Ms. Thompson's federal income tax debt under Bankruptcy Code Section 523(a)(1)(A), and the Court directed the parties to confer on a stipulated resolution of the matter. Feb. 21 Hearing Tr.

4

at 41:3-6. The Court also noted that it appeared from the record that the Court has subject matter to consider an adversary proceeding addressing the dischargeability of a debt.  Feb. 21 Hearing Tr. at 35:7-11.

On April 10, 2024, Ms. Thompson and the IRS submitted a proposed Stipulated Order Dismissing Adversary Proceeding.  ECF No. 26 ("Proposed Stipulated Order").  The Proposed Stipulated Order states that "[the] Plaintiff's 2013 through 2016 tax liabilities became due more than three years before her Chapter 7 Petition and were assessed more than 240 days before the petition" and that "[t]he IRS has never indicated an intention to assert that the Debtor willfully attempt to defeat the taxes within the meaning of 11 U.S.C. § 523(a)(1)(C)."  Proposed Stipulated Order at 1-2.

The Proposed Stipulated Order also states, apparently at the IRS's request, that the dismissal was premised on this Court's lack of subject matter jurisdiction, based on the asserted lack of a live case or controversy under Article III of the U.S. Constitution.  *See* Transcript of May 7, 2024 hearing, ECF No. 28 ("May 7 Hearing Tr."), at 4:11-13 (stating that "in the stipulation, [Ms. Thompson] basically [acceded] to the demands of the Internal Revenue Service that the Court determine[] . . . that it didn't have jurisdiction").  In particular, the parties' Proposed Stipulated Order states that "the above-captioned adversary proceeding is DISMISSED due to the lack of a live case or controversy under Article III of the U.S. Constitution without prejudice to the Debtor's right to file a new adversary complaint if the IRS violates or threatens to violate the discharge injunction in 11 U.S.C. § 524."  Proposed Stipulated Order at 2.

On April 11, 2024, the Court held a continued pre-trial conference, at which the IRS appeared and was heard and the Plaintiff did not appear.  The Court invited the parties to submit a revised stipulation and proposed order that would not address the presence or absence of

subject matter jurisdiction and a constitutional case or controversy. The Court also noted that language proposed by the parties in a revised stipulation and proposed order – or in any proposed order – could be modified by the Court prior to entry of the stipulation and proposed order as an order of the Court. *See* Docket entry dated April 11, 2024 (stating "Parties directed to confer on any revisions to stipulation and proposed order of dismissal . . . and to advise court whether they seek approval of the stipulation and proposed order . . . The Court notes [that] decretal language proposed by parties may be modified by the Court prior to entry of the stipulation and proposed order as an order").

On April 19, 2024, Ms. Thompson and the IRS filed a Status Letter stating that the IRS would not agree to a stipulation of dismissal that did not dismiss this adversary proceeding on the grounds that it prefers – that, in its view, this Court lacks subject matter jurisdiction because, based on the parties' respective positions, the second Amended Complaint does not present a live case or controversy. Status Letter dated April 19, 2024, ECF No. 27 ("April 19 Status Letter"), at 1. The April 19 Status Letter also states that the "Plaintiff . . . strongly opposes dismissal for lack of a case or controversy." April 19 Status Letter at 1-2.

And finally, on May 7, 2024, the Court held a continued pre-trial conference and hearing on the Motion to Dismiss, at which Ms. Thompson and the IRS appeared and were heard. At that conference, Ms. Thompson described the more limited scope of the relief that she now seeks under the second Amended Complaint. In particular, she clarified that, in that complaint, she now sought a dischargeability determination solely under Bankruptcy Code Section 523(a)(1)(A), pertaining to the "dischargeability [of] tax returns that were filed outside of the 3-year limit or outside the 240-day limit." May 7 Hearing Tr. at 9:8-10.

At that conference, the parties also confirmed that, in substance, there is no dispute as to

the dischargeability of Ms. Thompson's federal income tax debt under Bankruptcy Code Section 523(a)(1)(A), as reflected in the Proposed Stipulated Order. In particular, the Court inquired of the IRS, "does the IRS dispute that the debt at issue is a dischargeable debt?" and the IRS responded, "[t]he IRS does not – no." May 7 Hearing Tr. at 7:18-20. *See* May 7 Hearing Tr. at 7:22-8:2 (responding to the Court's question "Does the IRS . . . dispute that the debt is a dischargeable debt, yes or no?," by stating "At this point, no.").

At the same time, the IRS expressed concerns about the potential scope of the relief that Ms. Thompson sought. To the extent that she sought:

> the determination that under [Section] 523(a)(1)(C) that is for all time, at this point, going forward, a dischargeable debt . . . the IRS has not indicated that it would seek an exception to discharge in any future cases. But . . . the Court cannot tie the United States' hands under the circumstances.

May 7 Hearing Tr. at 8:5-12.

But that relief is no longer sought by Ms. Thompson in the second Amended Complaint. As she explained, "[w]hat we're seeking here is something in writing from the Court stating that the debt is dischargeable" – but only pursuant to Bankruptcy Code Section 523(a)(1)(A), and not Section 523(a)(1)(C), concerning fraud or a willful attempt to defeat the taxes. May 7 Hearing Tr. at 5:8-9. As Ms. Thompson stated:

> [O]ur Amended Complaint omits the provision with regard to fraud. So if the IRS takes the position that it doesn't know whether fraud has been committed, it's not a part of our complaint at this point, and the IRS is free to pursue that if it wishes to do so.

May 7 Hearing Tr. at 9:11-15.

## **Discussion**

When this adversary proceeding was commenced, Ms. Thompson sought an order stating that her unpaid federal income tax debt for a five-year period, from 2012 to 2016, is within the

scope of her Chapter 7 bankruptcy discharge. Soon thereafter, two things occurred – first, the IRS moved to dismiss this action, and next, Ms. Thompson and the IRS reached, in substance, an agreement on the centerpiece of a consensual resolution – the dischargeability of Ms. Thompson's federal income tax debt on the limited grounds that the age of that debt places it *outside* the scope of the *exclusion* from a debtor's discharge contained in Bankruptcy Code Section 523(a)(1)(A).

In most situations, the parties' agreement on the central relief that is sought would lead to the resolution of the matter. Indeed, courts often encourage parties to consider whether they can find common ground, and when they do, to enter into stipulated dismissals or similar relief. This is consistent with the direction of Bankruptcy Rule 1001 and Federal Rule of Civil Procedure 1 "to secure the just, speedy, and inexpensive determination of every case and proceeding."

But here, an additional question is presented, and it lies at the intersection of the parties' agreement and the IRS's Motion to Dismiss – does the parties' agreement on the question of the dischargeability of Ms. Thompson's federal income tax debt somehow divest this Court of subject matter jurisdiction? The IRS argues for this conclusion on both legal and pragmatic grounds. It argues that as a matter of law, this Court lacks subject matter jurisdiction because the parties' agreement amounts to the absence of a case or controversy for the Court to address.

And the IRS asserts that, as a practical matter, if it is required to defend potentially large numbers of claims seeking determinations as to the dischargeability of federal income tax debt, including on grounds under Bankruptcy Code Section 523(a)(1)(C) that "the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax" – grounds that are not asserted here – it may be overwhelmed by the scope and scale of the task.

As the IRS states in the Motion:

> [A]part from the unnecessary burdens this imposes upon the courts as well as the Executive Branch, there is a risk of serious financial harm to the United States from the entry of premature declaratory judgments. That is, in cases in which the government opts to forego an immediate investigation through court discovery, a judgment of dischargeability may prevent the government from asserting a *Toti* issue even if it is later informed of a Swiss bank account or other clear evidence of fraud. Once a judgment is entered, unless the government found newly discovered evidence of the account within one year and, further, proved that it could not have obtained relief from the judgment of dischargeability under Fed. R. Civ. P. 60(b) applicable under Bankruptcy Rule 9024. And the issue is perhaps even more problematic considering the possibility, however remote, of a fraudulent return. If the Court now declares 2016 tax discharged, for example, and the IRS subsequently learned that the Debtor concealed hundreds of thousands of dollars in unreported income, the Debtor would no doubt argue that any tax on such unreported income is discharged on the basis of res judicata.
>
> Therefore, unless IRS objects to jurisdiction where there is no case or controversy, or if the Court overrules such an objection, IRS must either suffer a judgment against it that permanently impairs its ability to investigate any subsequently obtained indication of fraud or collection avoidance, or immediately conduct a resource-intensive investigation before IRS has reason to even suspect a willful attempt to defeat the tax let alone fraud on a return. The problem is multiplied by the many dischargeability complaints filed by bankruptcy debtors throughout the nation every year.

Mot. at 5-6.

Accordingly, the IRS asks this Court not just to dismiss this adversary proceeding, but also to do so on its preferred and very specific grounds – that the Court lacks subject matter jurisdiction to proceed.

As a starting point, and as the Second Circuit has explained, "when a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020).

And here, Ms. Thompson has amended her complaint twice following the filing of this Motion to Dismiss – and has addressed the concerns expressed by the IRS concerning the

possibility of unintentionally broad relief that could insulate aged tax debt from *any* future challenge to its dischargeability, including on grounds of fraud, by narrowing the scope of relief that she seeks.  The Amended Complaint no longer seeks the kind of relief about which the IRS has voiced valid concerns – that is, some kind of sweeping determination that Ms. Thompson's federal income tax debt is dischargeable "no matter what."  Feb. 21 Hearing Tr. at 20:8.

Accordingly, here, the Court considers the IRS's Motion to Dismiss, together with its Reply Memorandum of Law in further support of that motion, as well as its Answer, in light of the entire record, including the facts alleged and the relief requested in the Second Amended Complaint, and the parties' agreement as reflected in the Proposed Stipulated Order.

*This Court's Duty To Consider Subject Matter Jurisdiction*

Bankruptcy courts, like other federal courts, have jurisdiction to hear "cases and controversies."  U.S. Const. art. III § 2.  As one court has explained, "[b]ecause Article III limits district court jurisdiction to adjudicating cases and controversies, and the derivative nature of bankruptcy court jurisdiction means that it cannot extend beyond the jurisdiction of the district court, bankruptcy court jurisdiction is also so limited to adjudicating cases and controversies." *Pettine v. Direct Biologics, LLC* (*In re Pettine*), 655 B.R. 196, 209-10 (B.A.P. 10th Cir. 2023).

And indeed, some courts have suggested that bankruptcy court jurisdiction may exceed these boundaries.  As the Fourth Circuit has noted, "[o]nce a case is validly referred to the bankruptcy court, the Constitution does not require it be an Article III case or controversy for the bankruptcy court to act."  *Kiviti v. Bhatt*, 80 F.4th 520, 533 (4th Cir. 2023).  *See In re Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018) (finding that "[b]ankruptcy courts are not Article III creatures bound by traditional standing requirements.").

Courts generally agree that for jurisdiction to exist, "an actual controversy must be extant

at all stages of review, not merely the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quotation marks omitted). And "[a] case becomes moot . . . when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Brown v. Mermaid Plaza Assocs.*, 2018 WL 2722454, at *8 (E.D.N.Y. Mar. 8, 2018) (quotation marks omitted). But as the *Brown* court also observed, "[t]his standard is stringent: As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Brown*, 2018 WL 2722454, at *8 (quotation marks omitted). *See Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022) (stating that "[i]f because of changed circumstances 'a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness'" (quoting *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021))).

At the same time, the question of subject matter jurisdiction "can never be forfeited or waived." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (quotation marks omitted). And the presence or absence of subject matter jurisdiction is not a question that can be resolved by the parties' agreement – in either direction. As one court has found, "[a] federal court cannot simply accept a stipulation of the parties regarding subject matter jurisdiction – whether it be that jurisdiction does or does not exist – without rendering an affirmative finding on that issue." *Zanotti v. Invention Submission Corp.*, 2020 WL 2857304, at *8 (S.D.N.Y. June 2, 2020) (quotation marks omitted).

Accordingly, notwithstanding any proposed agreement between Ms. Thompson and the IRS, it is incumbent upon this Court to consider and address the question of whether it has subject matter jurisdiction in this adversary proceeding.

*This Court's Subject Matter Jurisdiction To Hear and Determine this Dischargeability Action*

The first question that the Court considers is whether, as a threshold matter, this Court has subject matter jurisdiction over Ms. Thompson's dischargeability claim, which arises under Bankruptcy Code Section 523(a)(1)(A). And here, the answer is plainly yes.

Judiciary Code Section 157(b)(2)(I) provides that "determinations as to the dischargeability of particular debts" are core proceedings arising under the Bankruptcy Code. As a core matter, this Court has constitutional authority to enter a final judgment because the claim alleged in the Second Amended Complaint, concerning the "dischargeability of particular debts," stems "from the bankruptcy itself." *Stern v. Marshall*, 564 U.S. 462, 475 n.3, 499 (2011).

This proceeding, at its core, seeks a determination from this Court as to the scope of Ms. Thompson's discharge. In Judiciary Code Section 157(b)(1), Congress "specifically granted subject matter jurisdiction to bankruptcy judges to hear and determine core proceedings, and in § 157(b)(2) Congress defined core proceedings to include 'determinations as to the dischargeability of particular debts.'" *Cook v. IRS* (*In re Cook*), 230 B.R. 475, 476-77 (Bankr. D. Conn. 1999) (quoting 28 U.S.C. § 157(b)(2)(I)). Accordingly, "[t]his proceeding, being at its core an action to determine the dischargeability of a debt, falls squarely within the ambit of those types of proceedings for which subject-matter jurisdiction has been conferred on this Court by 28 U.S.C. §§ 157 and 1334." *Kohl v. IRS* (*In re Kohl*), 397 B.R. 840, 844 (Bankr. N.D. Ohio 2008). *See Koos Enters., v. Hughes* (*In re Hughes*), 2020 WL 2790486, at *3 (Bankr. D. Neb. May 28, 2020) (stating that "[b]ankruptcy courts have jurisdiction to hear claims under section 523"). To the same effect, a debtor has statutory standing to bring a dischargeability claim, and to seek "a determination . . . that the taxes owed . . . are dischargeable in [the] Bankruptcy Case." *Blalock*

*v. Miss. Dep't of Rev.* (*In re Blalock*), 537 B.R. 284, 292-93 (Bankr. S.D. Miss. 2015) (finding that debtors have statutory standing to bring dischargeability claims.).

Similarly, courts find that the Bankruptcy Rules themselves "suggest that questions regarding dischargeability should be considered sooner rather than later." *Mallinckrodt PLC v. City of Rockford* (*In re Mallinckrodt PLC*), 2021 WL 2585366, at *2 (Bankr. D. Del. June 23, 2021) (citing Bankruptcy Rules 4004(a), 4007(c)). As one court explained:

> In § 157, there is vested in the Bankruptcy Courts jurisdiction to determine core proceedings. In § 157(b)(2)(B), a core proceeding includes allowance or disallowance of claims, and (2)(I) includes jurisdiction to determine the dischargeability of particular debts. . . . Further, 28 U.S.C. § 1334 clearly vests adequate jurisdiction in this Court to determine the dischargeability of claims, including tax claims.

*Deel v. IRS* (*In re Deel*), 65 B.R. 230, 231 (Bankr. W.D. Va. 1986) (footnotes omitted).

The next question that the Court considers is whether the fact that the IRS does not dispute that, based on the age of the debt, Ms. Thompson's federal income tax debt is within the scope of her Chapter 7 bankruptcy discharge somehow divests this Court of subject matter jurisdiction here. And here, the answer is plainly no.

As a threshold matter, some context and perspective about the nature of Ms. Thompson's claim and the relief that she seeks is warranted. As this Court has found, an attempt to collect on a discharged debt is not just about money – it is about the hardships and burdens that impair a debtor's efforts to achieve the "fresh start" that is a centerpiece of the bankruptcy system. *See Youssef v. Sallie Mae, Inc.* (*In re Homaidan*), 640 B.R. 810, 851 (Bankr. E.D.N.Y. 2022). And as this Court and others have observed, "one of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a 'fresh start.'" *Golden v. Discover Bank* (*In re Golden*), 630 B.R. 896, 911 (Bankr. E.D.N.Y. 2021). *See McKenzie-Gilyard v. HSBC Bank Nev., N.A.* (*In re McKenzie-Gilyard*), 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007) (citing

13

*Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007)).

The debtor's discharge, effectuated through the statutory discharge injunction, is central to this "fresh start," because it protects the debtor "from creditors' attempts to collect discharged debts after bankruptcy." *In re McKenzie-Gilyard*, 388 B.R. at 480.  As stated by a bankruptcy court in a related context, "there is . . . a strong policy in protecting a debtor's fresh start after their bankruptcy proceedings are resolved." *Credit One Bank, N.A. v. Anderson* (*In re Anderson*), 560 B.R. 84, 93 (S.D.N.Y. 2016). That is, the relief that Ms. Thompson seeks here is substantial, and it goes to the heart of one of the purposes for which she filed her bankruptcy case and this adversary proceeding.  The fact that the IRS is persuaded that she is correct does not mean that the case should not have been brought or cannot be adjudicated.

Here, Ms. Thompson and the IRS have found common ground on what may be one of the central objectives that led Ms. Thompson to file this bankruptcy case and adversary proceeding – establishing the dischargeability of her federal income tax debt for the tax years 2012 to 2016 on grounds that it is more than three years old, and therefore, outside the scope of Section 523(a)(1)(A)'s exception from discharge.

And Ms. Thompson and the IRS have also found common ground on narrower and more tailored relief that is now sought in the second Amended Complaint, which is more carefully defined than the relief that Ms. Thompson originally appeared to seek.  That is, as originally pleaded, Ms. Thompson sought a determination that her federal income tax debt was not excluded from her bankruptcy discharge based on the provisions of Bankruptcy Code Section 523(a)(1) – and this could include tax debt "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."  11 U.S.C. § 523(a)(1)(C).

In response to legitimate concerns expressed by the IRS about the apparent breadth of this claim for relief, which could potentially include nondischargeability under Section 523(a)(1)(C), and the burdens that it would impose on the IRS to, in effect, rule out the grounds of "a fraudulent return" or a "willful[] attempt . . . to evade or defeat such tax," Ms. Thompson promptly amended her complaint to narrow and clarify her request for relief, to address only whether her tax debt for the years 2012 to 2016 is outside the scope of Bankruptcy Code Section 523(a)(1)(A)'s exception to discharge, based on the age of the debt. This scope of relief is consistent with the parties' Proposed Stipulated Order, which states that "Plaintiff's 2013 through 2016 tax liabilities became due more than three years before her Chapter 7 Petition and were assessed more than 240 days before the petition." Proposed Stipulated Order at 1.

But the parties' accord, as reflected in the Proposed Stipulated Order, that Ms. Thompson's federal income tax debt for the years 2012 to 2016 is outside the scope of Section 523(a)(1)(A)'s exception to discharge, does not divest this Court of subject matter jurisdiction here. Put another way, subject matter jurisdiction is not so pliable or fragile that it can be either created or negotiated away by parties in a stipulated resolution of a dispute to accommodate the position and preference of a party to the dispute. Just as subject matter jurisdiction cannot be created by an agreement of parties to a case, it also cannot be abrogated as an accommodation to a party's position in the context of a negotiated resolution to a dispute.

For example, if a court approves a settlement and enters an order of dismissal between the parties to an action, it does not somehow cede or dissolve its subject matter jurisdiction in the matter. And indeed, it may nevertheless retain jurisdiction to construe its own order. As the Second Circuit has held, "[a] federal court sitting in equity that has jurisdiction to issue a decree necessarily has ancillary and supplemental jurisdiction to enter orders and judgments designed to

15

effectuate that decree." *In re Lafayette Radio Elecs. Corp.*, 761 F.2d 84, 92 (2d Cir. 1985). *See Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934) (stating that it is well-settled "[t]hat a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein").

And turning this around, if parties wished to bring a dispute to a federal forum, but lacked a basis for federal subject matter jurisdiction, they could not invent that jurisdiction where it otherwise does not exist by entering into an agreement or stipulation to that effect. As one court noted, "[a] federal court cannot simply accept a stipulation of the parties regarding subject matter jurisdiction – whether it be that jurisdiction does or does not exist – without rendering an affirmative finding on that issue." *Zanotti*, 2020 WL 2857304, at *8 (quotation marks omitted).

The IRS points to the fact that, at least for now, it does not intend to pursue the collection of Ms. Thompson's federal income tax debt for the years at issue. And it suggests that this should be enough. In its Motion to Dismiss, it argues:

> The action is not fit for judicial decision because IRS does not dispute that the exceptions to discharge in § 523(a)(1)(A) and (B) are inapplicable, and the only possible way tax liability could be dischargeable would be if the Debtor has, unbeknownst to the IRS, either filed a fraudulent return or made a willful attempt to evade or defeat the collection of the tax. But the IRS has no present intention of either examining the returns from so many years ago in order to assess additional tax not reported or of accusing Debtor of evading collection of the taxes as reported.

Mot. at 9-10.

Similarly, the Proposed Stipulated Order submitted by Ms. Thompson and the IRS states that "[t]he IRS has never indicated an intention to assert that the Debtor willfully attempt[ed] to defeat the taxes within the meaning of 11 U.S.C. § 523(a)(1)(C)." Proposed Stipulated Order at 2. That is to say, the IRS states that it had no past intention, and it has "no present intention" of

arguing that Ms. Thompson's federal income tax debt at issue is nondischargeable, either because it comes within Section 523(a)(1)(A)'s exception to discharge or because it is the product of a fraudulent return or an attempt to evade or defeat the collection of the tax. Mot. at 9-10.

But perhaps unsurprisingly, the IRS does not state or stipulate that it will not in the future make such an argument – or any other argument, including an argument as to dischargeability under Bankruptcy Code Section 523(a)(1)(A), unlikely as that may seem. And the IRS's argument as to why this dispute is somehow "not fit for judicial decision" demonstrates the significance of the relief that a dischargeability action can provide to a debtor, notwithstanding the creditor's past or present intentions to pursue collection of the debt. A dischargeability determination, even on limited grounds, as is sought here, can allow a debtor the forward-looking "fresh start" promised by the Bankruptcy Code, free from any lingering concern that a creditor may have a change of course and attempt to collect on a debt that was properly discharged.

And again, as this Court has observed elsewhere, "an attempt to collect on a discharged debt is not just about money – it is about the hardships and burdens that impair a debtor's efforts to achieve the 'fresh start' that is a centerpiece of the bankruptcy system." *Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 650 B.R. 372, 423 (Bankr. E.D.N.Y. 2022). Achieving clarity in the form of a court order on the question of the dischargeability of a debt under circumstances such as are present here is "fit for judicial decision," and well within this Court's subject matter jurisdiction.

And so here. Ms. Thompson's, and any debtor's, concern about the future collectability of a debt is an authentic, legitimate, and substantive ground to bring a dischargeability action

under Bankruptcy Code Section 523.  The significance of this relief to a debtor is reflected in Bankruptcy Rule 4007(b), which provides that a complaint to determine the dischargeability of a debt under Section 523(a) may be filed at any time, and indeed, a case may be reopened for the purpose of filing a complaint to obtain such a determination.  According to the respected Collier on Bankruptcy treatise, "[b]y expressly permitting the debtor to file such a complaint, [Rule 4007(a)] reaffirms the jurisdiction of the bankruptcy court to decide dischargeability issues raised by the debtor."  9 Collier on Bankruptcy, ¶ 4007.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2021).

As important as this relief is to Ms. Thompson, it is worth noting what the Court is *not* deciding here.  The Court does not decide, nor is it asked to decide in light of the second Amended Complaint, whether Ms. Thompson's federal income tax debt is not nondischargeable based on any other grounds other than Bankruptcy Code Section 523(a)(1)(A).  This specifically includes fraud or a willful attempt to defeat these taxes, as set forth in Section 523(a)(1)(C).  As to any such grounds, they are not part of this action, and the Court does not "tie the United States' hands under the circumstances."  May 7 Hearing Tr. at 8:11-12.

For these reasons, this Court finds and concludes that it has subject matter jurisdiction to consider and enter judgment on this claim under Judiciary Code Section 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  And the Court also finds and concludes that nothing in that jurisdiction is altered by the determination of the IRS not to dispute the limited relief sought, as modified in the Second Amended Complaint, by Ms. Thompson.

## **Conclusion**

For the reasons stated herein and based upon the entire record, and for good cause shown, the Court finds and concludes that Ms. Thompson's federal income tax debt for the years 2012 to 2016, totaling $25,484, does not come within Bankruptcy Code Section 523(a)(1)(A)'s exception to discharge.

And for the reasons stated herein and based upon the entire record, and for good cause shown, the Motion to Dismiss of the IRS is granted, and this adversary proceeding is dismissed.

An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
October 10, 2024

Elizabeth S. Stong
United States Bankruptcy Judge